UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DONNA A. GALLEGOS,<br>　　　*Plaintiff,*<br>　　　　*v.*<br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br>　　　*Defendant.* | Civil No. 3:13cv393 (JBA)<br><br>September 11, 2014 |

**RULING ON DEFENDANT'S OBJECTION TO THE RECOMMENDED RULING**

Plaintiff Donna A. Gallegos commenced this action under Section 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), as amended. She seeks review of the final decision of Defendant, the Commissioner of Social Security, denying her Disability Insurance Benefits. On February 14, 2014, Magistrate Judge Margolis issued a Recommended Ruling [Doc. # 21] granting in limited part Plaintiff's Motion [Doc. # 14] to Reverse the Decision of the Commissioner, denying in limited part Defendant's Motion [Doc. # 19] to Affirm the Decision of the Commissioner, and remanding the matter for further consideration and testimony. (*See* Rec. Ruling at 34.) Defendant has filed a timely objection [Doc. # 22] to the Recommended Ruling, requesting that the Court reject the step-five analysis and affirm the Commissioner's decision. For the reasons that follow, Defendant's objection is overruled and the Recommended Ruling is approved and adopted as follows.

I.　　**Background**

The factual and procedural background of this action is presented on pages one through seventeen of the Recommended Ruling, which this Court incorporates by reference. Briefly, on July 28, 2010, Plaintiff Donna Gallegos applied for disability

insurance benefits, claiming she had been disabled since December 23, 2009, due to injuries to her back left arm, neck, and shoulder; numbness and weakness in her left hand; and high blood pressure. (*See* Certified Transcript of Administrative Proceedings, dated May 17, 2013 ("Tr.") 79, 101–04, 189–95.)  Ms. Gallegos is a 49-year old woman who lives with her mentally disabled adult daughter in a first-floor apartment. (*Id.* at 31– 33, 61–62, 66, 223.)  In December 2009, while Ms. Gallegos was employed as a bus driver, she was involved in a car accident which left her with injuries to her neck, shoulder, and left arm. (*Id.* at 36, 39, 40, 62–63.)  She stopped working at that time because "[t]he pain was just a lot worse[]," and she was unable to pass the medical tests necessary to continue as a bus driver. (*Id.* at 37–39.)

After Ms. Gallegos's application for disability benefits was twice denied, she requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* 111, *see id.* at 112– 15.)  That hearing was held on January 31, 2012. (*Id.* at 26.)  Plaintiff was represented by counsel at the hearing and continues to be represented throughout this action. (*Id.* at 9, *see id.* at 26, 109–10, 117.)  During the course of the hearing, vocational expert ("VE") James Cohen testified telephonically about occupations available to Ms. Gallegos in spite of her physical limitations. (*Id.* at 67–78.)  Specifically, Mr. Cohen testified that a hypothetical individual who, like the claimant, could perform only sedentary work, and who, like the claimant, needed the ability to stand up at various points throughout the day ("sit/stand option") could perform work. (*Id.* at 75–76.)  He enumerated three job options for such a person: "a telephone operator" (which he described as "unskilled, sedentary work"), "a telemarketer" ("unskilled, sedentary" work), and "a claims clerk" ("semi-skilled, sedentary" work). (*Id.*)  At the conclusion of Mr. Cohen's testimony, the

ALJ asked him whether his testimony had "been consistent with the DOT and its companion manual," to which he replied: "It has." (*Id.* at 77.) Partly on the basis of that testimony, ALJ Tracy subsequently determined that Ms. Gallegos had not been under a disability. (*Id.* at 10–21.)

## II.    Standard of Review

### A.    Standard of Review of a Magistrate Judge's Recommended Ruling

The Court reviews *de novo* those portions of the Recommended Ruling to which an objection is made, and may adopt, reject, or modify, in whole or in part, the Recommended Ruling. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

### B.    Standard of Review of a Social Security Disability Determination

This Court will "set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." *Balsamo v. Chater,* 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence 'is more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). The substantial evidence standard also applies to inferences and conclusions that are drawn from findings of fact. *See Gonzalez v. Apfel,* 23 F. Supp. 2d 179, 189 (D. Conn. 1998).

The Social Security Act provides that every individual who suffers from a "disability" is entitled to disability insurance benefits. *See* 42 U.S.C. § 423(a)(1). "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A).

In reviewing disability claims, the agency must follow a five-step process. First, the agency will determine whether a claimant is engaged in substantial gainful activity and second, whether the claimant has an impairment which is of the required duration and which significantly limits her ability to work. If the claimant is engaged in substantial gainful activity or does not have a sufficiently severe impairment, the claim will be denied. *See* 20 C.F.R. § 404.1520(a)–(c). Third, the medical evidence of the claimant's impairment is compared with a list of impairments presumed severe enough to preclude any gainful work, and if the claimant's impairment matches or "equals" one of the listed impairments, she qualifies for benefits without further inquiry. *See* 20 C.F.R. § 404.1520(d). However, if the claimant does not qualify under the listings, the agency must take the fourth step of determining whether the claimant can perform her own past work, *see* 20 C.F.R. § 404.1520(e)–(f), and if not, take the fifth step of assessing the claimant's present job qualifications, and whether jobs exist in the national economy that claimant could perform. *See* 20 C.F.R. § 404.1520(g); *see also generally Heckler v. Campbell,* 461 U.S. 458, 460–61 (1983). In making this determination, the agency may rely on medical-vocational guidelines which establish, through rulemaking, the types and numbers of jobs that exist in the national economy. *See Campbell,* 461 U.S. at 460. The burden of establishing a disability is on the claimant, and once the claimant demonstrates that she is incapable of performing her past work, the burden shifts to the agency to show that the claimant is capable of pursuing alternative work. *See Balsamo,* 142 F.3d at 80.

III.    **Discussion**

Defendant objects to the Recommended Ruling's analysis of step five.  Defendant contends that, contrary to the Magistrate Judge's conclusion in the Recommended Ruling, there is no conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT").  Therefore, Defendant argues, remand is unnecessary.

The Social Security Administration's Policy Interpretation Ruling 00-4p lays out the steps an ALJ should take if a VE's testimony is inconsistent with the DOT.  Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000).  The Ruling begins with the admonition that "[o]ccupational evidence provided by a VE or [Vocational Specialist ('VS')] generally should be consistent with the occupational information supplied by the DOT."  *Id.*  If "there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled."  *Id.*

Courts are split about the proper interpretation of this SSR.  The controversy centers on whether there is an "apparent conflict" within the meaning of the SSR when a VE's testimony is inconsistent with, but does not directly contradict, the DOT.  The Second Circuit has yet to weigh in on the issue.  The Seventh Circuit (in an unpublished decision) and at least one district court in this circuit have taken the position that "[b]ecause the DOT does not address the subject of sit/stand options, it is not *apparent* that the testimony conflicts with the DOT."  *Zblewski v. Astrue*, 302 Fed. App'x. 488, 494 (7th Cir. 2008) (emphasis added); *see Wellington v. Astrue*, 2013 WL 1944472, at *4 (S.D.N.Y. May 9, 2013) ("Because the DOT does not address the availability of a sit/stand

option, it cannot contradict the vocational expert's testimony which endorsed such option."). The Third and the Ninth Circuits, by contrast, have held that an apparent conflict *is* created when a VE testifies that a claimant requiring a sit/stand option is capable of performing jobs which are not described in the DOT as having a sit/stand option. *See Coleman v. Astrue*, 423 Fed. App'x. 754, 756 (9th Cir. 2011); *Boone v. Barnhart*, 353 F.3d 203, 207–08 (3d Cir. 2003).

For the following reasons, this Court finds the Third and Ninth Circuits's interpretations of the SSR in better accord with the language and structure of the SSR as well as the purposes of the DOT and will apply this interpretation, and declines to follow the Seventh Circuit's contrary analysis and conclusion in *Zblewski*.

The text of the SSR is not, however, unambiguous and requires analysis. Beginning with the word "apparent," two alternative definitions present themselves. The first, to which the Seventh Circuit appears to subscribe, is "obvious." Oxford Dict., *available at* http://www.oxforddictionaries.com; *see Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (finding that the SSR requires an ALJ to investigate conflicts in the VE's testimony only when they are obvious); *Zblewski*, 302 Fed. App'x. at 494 ("[T]he duty to inquire arises only when the conflict between the DOT and VE testimony is apparent."). With this definition, there would be no "apparent conflict" between a VE's affirmative testimony regarding the job prospects of a claimant requiring a sit/stand option and a DOT entry that is silent about a sit/stand option.

But, if "apparent" is defined instead as "seeming real or true, but not necessarily so" (as in, "it appears that there may be a conflict"), the bar for finding a conflict is lower. Oxford Dictionary, *available at* http://www.oxforddictionaries.com. Under this

definition, the conflict need not be blatant or obvious; there need only be the potential for conflict.  From the wording of the SSR, it appears that this second definition is what the Social Security Administration ("SSA") had in mind.  The section of the SSR immediately following the mandate that adjudicators seek explanations from VEs regarding "apparent unresolved conflict[s]" is titled: "Reasonable Explanations for Conflicts (or Apparent Conflicts) in Occupational Information."  SSR 00-4p.  If the SSA intended "apparent conflict" to mean "obvious" conflict, this title is illogical, or at least redundant.  The title makes sense, however, if "apparent conflict" is understood to mean that there is a potential for conflict.

The meaning of the word "conflict" is also subject to fair debate.  Although the word could be defined to be synonymous with "contradiction," *see Wellington*, 2013 WL 1944472, at *4 ("Because the DOT does not address the availability of a sit/stand option, it cannot contradict the vocational expert's testimony which endorsed such an option"), it could just as easily be understood to be synonymous with "inconsistency," *see* Oxford Dict., *available at* http://www.oxforddictionaries.com; *see also Overman*, 546 F.3d at 464. This distinction is critical.  A VE's testimony could be inconsistent with the DOT while not directly contradicting it.  Looking to context to determine which definition the drafters intended, it appears the definition they had in mind is closer to "inconsistency" than "contradiction."  The section of the SSR titled "Resolving Conflicts in Occupational Information" begins: "Occupational evidence provided by a VE or VS should be *consistent with* the occupational information supplied by the DOT."  SSR 00-4p (emphasis added).  The SSR continues: "When there is an apparent unresolved conflict . . . the adjudicator must elicit a reasonable explanation for the conflict."  *Id.*  The paragraph

7

ends with a mandate that adjudicators "inquire, on the record, as to whether or not there is such *consistency.*"  *Id.* (emphasis added).

This understanding of the SSR is further buttressed by the apparent purpose of the SSR.  The SSR begins: "In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy . . . . We may also use VEs and VSs . . . to resolve complex vocational issues."  *Id.*  Because the DOT is recognized to be "the best source for how a job is generally performed," *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001), and because DOT "occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces," SSR 00-4p, ALJs are instructed that they may rely on VE or VS testimony that is inconsistent with the DOT only in certain specified circumstances.  Before relying on inconsistent VE testimony, the ALJ must obtain a reasonable explanation from the VE for the inconsistency, and the VE must provide some basis for her inconsistent testimony. *Id.*  An ALJ may rely on inconsistent VE testimony if it is based on the VE's experience, information obtained from employers, or information obtained from another reliable source.  *Id.*

Turning now to Ms. Gallegos's case and applying the definition this Court has found applicable, it is plain that there was an apparent conflict between the VE's testimony and the DOT.  In response to the ALJ's hypothetical, the VE testified that a person requiring a sit/stand option could perform the jobs of: "telephone operator," "telemarketer," or "claims clerk."  (Tr. at 76.)  The VE further stated that his testimony was "consistent with the DOT and its companion manual."  (*Id.* at 77.)  In fact, the DOT does not specify whether any of the three jobs the VE identified have sit/stand options.

This inconsistency between the VE's testimony and the DOT is not trivial.  *See Coleman*, 423 Fed. App'x. at 756 (holding that a VE's failure to explain an inconsistency or justify deviations from the DOT is not harmless error).  If none of the jobs the VE mentioned actually do have sit/stand options,[1] the adjudicator may be bound to rule for the claimant at step five.

The existence of this apparent conflict gave rise to a duty on the part of the adjudicator to elicit from the VE a reasonable explanation for the inconsistency, and to ask the VE for the basis of his testimony.  *See* SSR 00-4p.  The adjudicator here did neither, nor did the VE volunteer the basis of his testimony.  For these reasons, this case is unlike other cases where courts have upheld ALJ decisions based on inconsistent testimony from a VE.  *See, e.g., Flores v. Colvin*, 546 Fed. App'x. 638, 641 (9th Cir. 2013) ("[T]he ALJ's failure to follow the procedural requirements of SSR 00-4p was harmless because the VE acknowledged that his description of the position varied from the DOT's

---

[1] Indeed, it appears that this may be the case.  SSR 83-12 specifically addresses the effect a claimant's need for a sit/stand option will likely have on a claimant's job prospects.  The Ruling states:

> In some disability claims, the medical facts lead to an assessment of [Residual Functional Capacity] which [is] compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. . . .  Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work. . . .  [M]ost jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task.  *Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.*

SSR 83-12, 1983 WL 31253 (S.S.A. 1983), at *5–6 (emphasis added).  These observations are particularly pertinent here because the three jobs mentioned by the VE are all sedentary and two of the three are unskilled.  (Tr. at 49.)

and he offered reasonable explanations for using a differing description."); *Zblewski*, 302 Fed. App'x. at 494 (determining that an ALJ's failure to interrogate a VE's sit/stand testimony was harmless error where the VE stated on the record that his testimony regarding a sit/stand option was based on his experience).

Because the ALJ here elicited neither the basis for the VE's testimony nor a reasonable explanation for his deviation from the DOT, the Court cannot determine whether substantial evidence supports the ALJ's step five findings.

## IV.   Conclusion

For the reasons discussed above, Defendant's objection [Doc. # 22] is OVERRULED and the Recommended Ruling [Doc. # 21] is APPROVED and ADOPTED.  Plaintiff's Motion [Doc. # 14] to Reverse the Decision of the Commissioner is GRANTED in part and DENIED in part as set forth in the Recommended Ruling. Defendant's Motion [Doc. # 19] to Affirm the Decision of the Commissioner is GRANTED in part and DENIED in part as set forth in the Recommended Ruling.  This matter is hereby REMANDED for "further consideration and testimony with respect to occupational evidence relating to a 'sit/stand option.'"  (Rec. Ruling at 34.)  The Clerk is directed to enter judgment and to close the case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 11th day of September, 2014.